UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AUTONIQ, LLC )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>LASER APPRAISER, LLC )<br>)<br>Defendant. ) | Case No. 1:22-cv-00368 |

**COMPLAINT AND JURY DEMAND**

For its Complaint against Defendant Laser Appraiser, LLC ("Defendant"), Plaintiff Autoniq, LLC ("Autoniq"), through the undersigned, states and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for false advertising arising under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and for breach of contract under the laws of the State of Indiana.

**THE PARTIES**

2. Autoniq is a Virginia limited liability company with its principal place of business at 11299 N. Illinois Street, Carmel, Indiana 46032.

3. Defendant is a Georgia limited liability company with its principal place of business at 1360 Caduceus Way, Bldg. 500, Suite 107, Watkinsville, Georgia 30677.

US.136922909.01

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1338(a) and 15 U.S.C. § 1121(a) because Autoniq's false advertising claim arises under the Lanham Act.

5. This Court has supplemental jurisdiction over Autoniq's Indiana state law claim for breach of contract pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because that claim is joined with a substantial and related claim under the Lanham Act, and is so related to the claim under the Lanham Act that they form part of the same case or controversy under Article III of the United States Constitution.

6. The exercise of *in personam* jurisdiction over Defendant comports with the laws of the State of Indiana and the constitutional requirements of due process because Defendant entered into a settlement agreement with Autoniq—a company headquartered in Carmel, Indiana—and committed tortious acts in the State of Indiana that caused injury to Autoniq.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Autoniq's claims occurred within the State of Indiana and this District. Alternatively, venue is proper in this District under 28 U.S.C. § 1391(b)(3) because Defendant is subject to the Court's personal jurisdiction.

## ALLEGATIONS RELEVANT TO ALL COUNTS

8. Autoniq – via a software solution branded **autoniq** –offers dealers an easy and convenient way to find, research, purchase, and price vehicles, both online and at auction.

9. For over a decade, Autoniq has continuously used the trademark **autoniq** (the "AUTONIQ Mark") in order to distinguish its products and services from those of its competitors. Autoniq has expended significant resources in advertising and promoting its products and services under the AUTONIQ Mark and has amassed significant goodwill in the AUTONIQ mark as a result.

10. In order to protect the extensive goodwill it has built up over the years in the AUTONIQ Mark, Autoniq has registered the AUTONIQ Mark on the principal register of the United States Patent and Trademark Office. Autoniq is the owner of all right, title, and interest in the below incontestable trademark registration:

| Mark | Reg. No. | Reg. Date | Date of First Use | Applicable Goods and Services |
|---|---|---|---|---|
| AUTONIQ | 4502642 | Mar. 24, 2014 | Mar. 2008 | Computer application software for mobile phones or other mobile devices, namely, software for use in scanning vehicle identification numbers to access accident and repair history, pricing, auction run lists and other auction information and market supply and demand information in the field of automobile wholesaling and retail sales; software for use by consumers to anonymously provide vehicle accident and repair history, pricing and other vehicle sales information to dealers in the field of automobile purchasing; software for use to provide automobile pricing and consumer information to dealers in the field of automobile purchasing; software for use to provide consumer and automobile availability information to dealers in the field of automobile purchasing; software for use to provide vehicle information and pricing in the field of automobile retail and wholesaling sales; and software for use to provide vehicle pricing and market information to dealers in the field of automobile retail and wholesaling sales<br><br>Software as a service (SAAS) services, namely, hosting software for use by others for use in accessing accident and repair history, pricing, auction run lists and other auction information and market and supply and demand information in the field of automobile wholesaling and retail sales; hosting software for use by consumers to anonymously provide vehicle accident and repair history, pricing and other vehicle sales information to dealers in the field of automobile purchasing; hosting software for use by others to provide automobile pricing and consumer information |

| | | | | to dealers in the field of automobile purchasing; hosting software for use by others to provide consumer and automobile availability information to dealers in the field of automobile purchasing; hosting software for use by others to provide vehicle information and pricing in the field of automobile retail and wholesaling sales; and hosting software for use by others to provide vehicle pricing and market information to dealers in the field of automobile retail and wholesaling sales |
|---|---|---|---|---|

11. A copy of the certificate of registration for the AUTONIQ Mark is attached hereto as **Exhibit A**.

12. Defendant provides used car dealership management software to independent car dealerships and wholesalers via a mobile and desktop application.

13. In or about November 2019, Autoniq discovered that Defendant has purchased online keyword search advertisements, including but not limited to Google advertisements, that resulted in sponsored ads that impermissibly used the AUTONIQ Mark. These advertisements were generated when a user searched for the term "autoniq," and prominently displayed the AUTONIQ Mark as the first word in the heading of the sponsored advertisement. Clicking through the advertisement then took the user to Defendant's website featuring Defendant's competing product. An image of Defendant's online keyword search advertisement is depicted below.



14. On November 20, 2019, Autoniq, through its counsel, sent a cease and desist letter to Defendant regarding (among other things) Defendant's unauthorized use of the AUTONIQ Mark.

15. Though Defendant agreed to comply with Autoniq's demands, it shortly thereafter launched an email marketing campaign wherein consumers receive an email entitled "Upgrade Your Autoniq Account" (the "Email Campaign"). When a user opened the email to learn more about the upgrade, the user was prompted to download Laser Appraiser's product. One such email is pictured below.

US.136922909.01



16.     Upon information and belief, Defendant's email campaign targeted consumers located across the United States, including the State of Indiana.

17.     As a result of the Email Campaign, Autoniq received inquiries from confused customers regarding Laser Appraiser's affiliation with Autoniq.

18.     On January 17, 2021, Autoniq sent another cease and desist letter to Laser Appraiser, this time regarding the impermissible Email Campaign.

19.     Defendant shortly thereafter announced its intention to redesign its mobile application. Autoniq believed that the proposed redesign was a purposeful attempt to copy the look and feel of Autoniq's mobile application and further confuse consumers.

US.136922909.01

20. Unable to resolve its differences with Defendant, Autoniq was ultimately forced to bring a lawsuit on September 21, 2020 (the "Prior Action")—nearly a full year after it first initiated contact with Defendant. Autoniq brought the Prior Action in United States District Court for the Southern District of Indiana (Indianapolis Division) in a case captioned *ADESA, Inc. and Autoniq, LLC v. Laser Appraiser, LLC*, Cause No. 1-20-CV-2433 and alleged various violations of its intellectual property rights in the AUTONIQ Mark.

21. Autoniq and Defendant settled the Prior Action via a settlement agreement dated January 29, 2021 (the "Settlement Agreement") in which Defendant agreed to cease all use of the AUTONIQ Mark in connection with any of Defendant's services or the advertisement of its services "unless such use comprises fair use under the law."

28. In or about December 2021, Autoniq discovered Defendant has continued purchasing online keyword search advertisements, including without limitation Google advertisements, that result in sponsored ads that display the AUTONIQ Mark in a manner that violates the Settlement Agreement. These advertisements are generated when a user searches for the term "autoniq," and prominently displays the AUTONIQ Mark in association with false or misleading information.

29. The first known advertisement ("Infringing Advertisement 1") is depicted below:

> Ad · https://www.laserappraiser.com/la_vs_an    (888) 752-7372
> **laserappraiser.com - Autoniq® phones are on Hold.**
> Laser Appraiser vs **Autoniq**® - Compare VIN scanner features , valuation data, & Price.
> **Autoniq**® scans only barcodes. Laser Appraiser scans VIN text and barcodes instantly. Dealer Management. Contact Us. Free Demo. Services: Valuate, Appraise, Maximize ROI.
> VIN Scanner · Free Dealership Demo

30. Infringing Advertisement 1 contains a misleading statement—"Autoniq® phones are on hold"—and a false statement—"Autoniq® scans only barcodes." Informing consumers that "Autoniq® phones are on hold" conjures images of lengthy and frustrating wait times and leads consumers to conclude that Autoniq is unresponsive to support inquiries. But, in reality, Autoniq's average time to answer incoming calls is less than 25 seconds. And Autoniq's products do not scan "only barcodes". Autoniq's products also scan QR codes, which is significant in today's auto auction industry as many vehicles feature QR codes on their VIN plate. Additionally, auction stickers applied to vehicles have largely transitioned from bar codes to QR codes. Defendant's statement is not only false – it is also misleading in that it suggests that Autoniq is somehow behind the times and its product useless in an industry that is transitioning from bar codes when the exact opposite is true: Autoniq is on the cutting edge of the auto auction industry and its products are designed with today's practices in mind.

31. The second known advertisement ("Infringing Advertisement 2") is depicted below



US.136922909.01

32. Infringing Advertisement 2 repeats the same false and misleading statement from Infringing Advertisement 1—"Autoniq® scans only barcodes".

33. The third known advertisement ("Infringing Advertisement 3", and together with Infringing Advertisement 1 and Infringing Advertisement 2, the "Infringing Advertisements") is depicted below:

![Infringing Advertisement 3: Google ad for laserappraiser.com with headline "Best VIN Scanner. - Compare Autoniq® Price - laserappraiser.com" and text "Laser Appraiser vs Autoniq® - Compare VIN scanner features, valuation data, & Price. Autoniq® scans only barcodes. Laser Appraiser scans VIN text and barcodes instantly. Contact Us. Free Dem…" with sitelinks: Auction Run List Insights, Free Dealership Demo, VIN Scanner]

34. Infringing Advertisement 3 repeats the same false and misleading statement regarding Autoniq's product.

35. The Infringing Advertisements actually deceive, or have the tendency to deceive, a substantial segment of Autoniq's customers and potential customers. This deception is material as it concerns an inherent quality, characteristic, and performance of Autoniq's product that competes directly with Defendant and is likely to influence the purchasing decisions of customers and potential customers.

<u>**COUNT I**</u>

**False Advertising Under Section 43(a) of the Lanham Act**

36. Autoniq repeats and realleges the preceding paragraphs as if fully set forth herein.

US.136922909.01

37. Defendant has made and distributed in interstate commerce and in this judicial district advertisements that contain false and misleading representations and statements of fact. These advertisements contain actual misrepresentations, misstatements and/or misleading statements or failures to disclose. Specifically, Defendant has repeatedly misrepresented in at least three separate and distinct advertisements that Autoniq's products scan only bar codes when, in fact, they also scan QR codes.

38. This claim actually deceives, or has the tendency to deceive, a substantial segment of Autoniq's customers and potential customers. This deception is material as it concerns an inherent quality, characteristic, and performance of a product that competes directly with Defendant's products and is likely to influence the purchasing decisions of customers and potential customers.

39. Additionally, Defendant—in at least one advertisement—represents to the consuming public that "Autoniq® phones are hold", suggesting long wait times and unresponsive customer service when Autoniq's average time to answer incoming calls is less than 25 seconds.

40. This claim also actually deceives, or has the tendency to deceive, a substantial segment of Autoniq's customers and potential customers. This deception is material as it concerns an inherent quality, characteristic, and performance of Autoniq's customer service that competes directly with Defendant and is likely to influence the purchasing decisions of customers and potential customers.

41. Defendant's false and misleading advertising statements and omissions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendant has caused, and will continue to cause, immediate and irreparable injury to Autoniq, including injury to Autoniq's business, reputation, and goodwill, for which there is no adequate remedy at law. Autoniq is therefore

entitled to an injunction under 15 U.S.C. § 1116 restraining Defendant, its agents, employees, representatives and all persons acting in concert with Defendant from engaging in future acts of false advertising and ordering removal of Defendant's false and misleading advertisements.

42. Pursuant to 15 U.S.C. § 1117, Autoniq is further entitled to recover from Defendant the damages sustained by Autoniq as a result of Defendant's acts in violation of 15 U.S.C. § 1125(a). Autoniq is at present unable to ascertain the full extent of the monetary damages it has sustained by reason of Defendant's acts.

43. Pursuant 15 U.S.C. § 1117, Autoniq is further entitled to recover from Defendant the gains, profits and advantages that Defendant has obtained as a result of its acts in violation of 15 U.S.C. § 1125(a). Autoniq is at present unable to ascertain the full extent of the gains, profits and advantages Defendant has obtained by reason of its acts.

44. Pursuant to 15 U.S.C. § 1117, Autoniq is further entitled to recover the costs of this action. Moreover, Autoniq is informed and believes, and on that basis alleges, that Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Autoniq to recover additional damages and reasonable attorneys' fees.

## COUNT II
### Breach of Contract

45. Autoniq repeats and realleges the preceding paragraphs as if fully set forth herein.

46. Defendant agreed in paragraph 2 of the Settlement Agreement that it shall "never use, directly or indirectly through any third party, [the Autoniq Mark] or any variations thereof in connection with any of its services or the advertisement of its services in the United States or internationally, unless such use comprises fair use under the law … ."

47. Defendant's use of the Autoniq Mark in connection with false statements about Autoniq's products and customer services is not fair use under the law.

48. Defendant is therefore in breach of the Settlement Agreement.

49. Pursuant to paragraph 7 of the Settlement Agreement, the remedy for a breach of paragraph 2 is liquidated damages in the amount of $10,000 for each breach:

> 7. **Remedies For Breach.** Laser Appraiser agrees that the damages that would result from any breach of this Agreement, including the provisions of Sections 2 (**Cessation of Use; No Further Use; No Registration**), 3 (**The Run Lists**), and/or 6 (**Confidentiality Provision**) would be extremely difficult or impossible to ascertain. Accordingly, to the extent that Laser Appraiser should breach this Agreement, Plaintiffs may recover liquidated damages from Laser Appraiser in the amount of <u>Ten Thousand U.S. Dollars ($10,000)</u> for each breach. Laser Appraiser agrees that this liquidated damage provision is reasonable and not intended to be a penalty, and that the amount to be paid is not greatly disproportionate to the loss likely to be sustained by Plaintiffs as a result of a breach. Nothing herein shall be deemed to deprive a non-breaching Party from pursuing any additional legal or equitable remedies it may have for any breach hereof.

50. As a direct and proximate result of Defendant's actions described herein, Autoniq suffered, and will continue to suffer, irreparable injury to its business, reputation, and goodwill, unless and until the Court permanently enjoins Defendant's actions. Autoniq has no adequate remedy at law for those of Defendant's actions that are ongoing.

51. As a direct and proximate result of Defendant's actions described herein, Autoniq is entitled to liquidated damages in the amount $10,000 per breach. Each of the Infringing Advertisements constitutes a breach, and Autoniq is therefore entitled to at least $30,000 in liquidated damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Autoniq respectfully requests that judgment be entered in its favor and prays:

A.That this Court permanently enjoin Defendant and each of its affiliates, associates, agents, servants and employees, and all others acting in concert with Defendant from directly, indirectly, contributorily, or vicariously engaging in false advertising with respect to Autoniq's products and services;

B.That this Court order Defendant to pay to Autoniq such damages as Autoniq has sustained by reason of Defendant's false advertising and other wrongful conduct;

C.That this Court order Defendant to account for and to pay Autoniq all profits derived by Defendant by reason of the acts complained of herein;

D.That this Court treble all profits and damages owing to Autoniq due to false advertising under 15 U.S.C. § 1125(a);

E.That this Court order Defendant to pay Autoniq its reasonable attorneys' fees and costs pursuant to the Lanham Act; and

F.That this Court order Defendant to pay to Autoniq at least $30,000 in liquidated damages in connection with its breach of the Settlement Agreement;

G.That this Court award Autoniq such other further relief as this Court deems just.

## DEMAND FOR JURY TRIAL

Autoniq respectfully request a trial by jury on all issues raised by this Complaint.

Dated: February 21, 2022        Respectfully submitted,

/s/ Louis T. Perry
Louis T. Perry (#25736-49)
louis.perry@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
300 North Meridian St., Suite 2500
Indianapolis, IN 46204
Phone: (317) 237-0300
Fax:    (317) 237-0000

*Attorney for Plaintiff*